(September 24, 1915.)

JAMES SUMEY, Respondent, v. CRAIG MOUNTAIN LUMBER COMPANY, a Corporation, Appellant.

[152 Pac. 181.]

PERSONAL INJURIES—DAMAGES—EMPLOYEES' LIABILITY ACT—STATUTORY CONSTRUCTION—THEORY OF THE CASE—WHAT LAW GOVERNS.

1. The defendant owns and operates a sawmill at Winchester in Lewis county, and employed the plaintiff to pile or deck logs that were delivered at a point about six miles from said sawmill, which logs were to be conveyed to said mill and manufactured into lumber. While at work under said employment the accident causing

the injury occurred, and the complaint was framed on the theory that this action is governed by the provisions of the Employers' Liability Act (Sess. L. 1909, p. 34). *Held*, under the facts of this case, that the trial court erred in trying the case upon the theory that it came within the provisions of said Employers' Liability Act.

2. The first section of said act provides, among other things, that "Every employer of labor in or about a railroad, street rail-. way, factory, workshop, warehouse, mine, quarry, engineering work, and any building which is being constructed, repaired, altered or improved, . . . . shall be liable to his employee or servant for a personal injury received by such servant or employee," etc. *Held*, that since the plaintiff was at work six miles or more from the sawmill of plaintiff, he was not at work "in or about" said sawmill, and therefore this action does not come within the provisions of said act.

3. *Held*, that said Employers' Liability Act does not govern every case of an employer's liability for injuries to his servant, but is only applicable to the specific cases enumerated in the act, being intended to supersede only so far the common-law duty of an employer to his employee and takes the place of the common-law liability in cases to which it is applicable.

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. Edgar C. Steele, Judge.

Action to recover damages for personal injuries.   Judgment for the plaintiff.   *Reversed.*

Charles L. McDonald, for Appellant.

"Statutes creating liability for causing death (Employers' Liability Law), while not strictly construed are not to be extended by implication, being in derogation of the common law." (*McClaugherty v. Rogue River Electric etc. Co.* (Or.), 140 Pac. 64.)

"About" commonly denotes nearness or proximity in degree. (1 Cyc. 196; *Featherman v. Hennessy,* 43 Mont. 310, 115 Pac. 983.)

"Words that are in common use among the people should be given the same meaning in the statute as they have among the great mass of people who are expected to read, obey and uphold them." (*Adams v. Lansdon,* 18 Ida. 483, 110 Pac. 280; *In re Bossner,* 18 Ida. 519, 110 Pac. 502; 1 Corpus Juris.

338, and note; *Rankin v. Amazon Ins. Co.,* 3 Cal. Unrep. 330, 25 Pac. 260; *Trojan Mfg. Co. v. Fireman's Ins. Co.,* 67 Cal. 27, 7 Pac. 4.)

"This statute does not cover every case of an employer's liability to his employee, but only the specific cases enumerated in the act." (*Schulte v. Pacific Paper Co.,* 67 Or. 334, 135 Pac. 527, 136 Pac. 5.)

G. W. Tannahill, for Respondent.

"The word 'about' is a relative term, which may indicate one thing when applied to one state of facts, and another under different circumstances." (1 Cyc. 196.)

"In concern with; engaged in; dealing with; occupied upon." (1 Corpus Juris. 333.)

The above quotation, wherein the author states that the word means "in concern with," is peculiarly applicable to the circumstances under which the word is used in connection with the milling plant.

We must take into consideration the fact that the jammer was used in connection with the manufacturing plant; was in fact a part of the plant itself; and is therefore, a relative term. (1 Corpus Juris. 333; *Brooke v. Warwick,* 12 Jur. 912, 913; *Powell v. State,* 63 Ala. 177.)

The only case we have been able to find in the state of Idaho in which this act has been considered at all is the case of *Chiara v. Stewart Min. Co.,* 24 Ida. 473, 135 Pac. 245, in which the court holds that the purpose of the act was to extend the right of employees and limit the defense of employers in cases of personal injury. This end would be frustrated if appellant were permitted to successfully interpose the highly technical defense by which it seeks in this case to defeat respondent's recovery. (Labatt, Master & Servant, sec. 1840 (3); 4 Thompson, Law of Negligence, sec. 4582; *Shain v. Sloan,* 38 Scot. L. R. 475, 8 Scot. L. T. 498; *Mooney v. Edinburgh etc. Co.,* 38 Scot. L. R. 260; 9 Scot. L. T. 366.)

SULLIVAN, C. J.—This action was brought by the plaintiff to recover from the appellant, the Craig Mountain Lumber

Company, $2,995 on account of personal injuries alleged to have been received while employed in decking logs for the appellant.

The case was tried by the court with a jury and a verdict was rendered in favor of the plaintiff and judgment entered thereon for the sum of $2,995 and costs of suit.

A number of errors are assigned, the principal one being that the court erred in trying the case and instructing the jury on the theory that under the facts of the case it fell within the provisions of an act of the legislature known as the "Employers' Liability Act," Laws 1909, p. 34.

The appellant corporation is engaged in operating a sawmill at Winchester, in Lewis county. The plaintiff was at the time of the injury working at a point known as "Farmers' Landing," situated about six miles from appellant's sawmill, and was receiving there from farmers living in that vicinity sawlogs and piling or decking them, which logs were subsequently to be conveyed to said mill and manufactured into lumber. The plaintiff was employed as a "cant-hook" man, which term is understood to be an all-round hand for handling logs. Plaintiff was put to work placing the logs at the top of the pile or deck at which place they were hoisted by an instrument called a "jammer." The motive power for hoisting said logs was a team of horses. The plaintiff apparently understood the work and gave satisfaction. The "jammer" was a large apparatus consisting of several strong, heavy poles in tripod shape which stood at the rear of the pile of logs, over the top of which appliance a cable ran, the end of the cable being attached to a block. From this point two separate cables ran out, at each end of which was affixed a hook. This was known as the "crotch." When it was desired to elevate a log on to the deck or pile, one of the hooks at the end of the crotch was inserted in each end of the log and the team, which was attached to the other end of the cable, starting up, pulled the log on to such part of the deck as it was desired to place it. The plaintiff's duties consisted of locating the place where the log was to rest on the deck, and, as the team came back for another log, in the event the

hooks did not come out of the log, to remove the same so that the men below could pull them down.

The defendant contended at the trial that the injury sustained was due entirely to the plaintiff's own negligence, and that had he used ordinary diligence in safeguarding himself, no injury whatever would have occurred, and that the hazard and danger in the work was obvious and patent, and that the plaintiff fully realized that fact.

We have perhaps gone more into detail in this case than was necessary, since the complaint is framed on the theory that the case was governed by the terms, conditions and limitations of the Employers' Liability Act (Sess. L. 1909, p. 34), while the defendant contends that its liability in this matter, if any, should have been measured according to the terms of the common law as enlarged or modified by the statutes of this state, and not by the provisions of said Employers' Liability Act.

The court in the trial of the case proceeded upon the theory that the case came within the provisions of said Employers' Liability Act. During the trial counsel for plaintiff offered in evidence the notice served upon the appellant required to be served by said act. Thereupon objection was made on the ground that said notice was irrelevant and immaterial, since this action does not come under the terms of said act. Thereupon the court said: "I think it must come under the terms of that act or they must fail. I will overrule the objection."

Now, unless said right of action comes within the said Employers' Liability Act, the case must be reversed.

The first section of said act, among other things, provides as follows:

Every employer of labor in or about a railroad, street railway, factory, workshop, warehouse, mine, quarry, engineering work, and any building which is being constructed, repaired, altered, or improved by the use and means of a scaffold, temporary staging, or ladders, or is being demolished, or on which machinery driven by steam, water or other mechanical power is being used for the purpose of construction, repair or demolition thereof, shall be liable to his employee

or servant for a personal injury received by such servant or employee in the service or business of the master or employer within this state when such employee or servant was at the time of the injury in the exercise of due care and diligence in the following cases'': Then follow six cases or provisions, and some other matter.

If we concede that a sawmill comes within the definition of ''factory,'' as used in said section, the question is presented whether the plaintiff under the facts of this case should be considered as having been working when the injury occurred ''in or about'' the sawmill of the plaintiff, the condition precedent to the applicability of the act in question. It seems clear to us that the defendant was not an employee of the defendant ''in or about'' its said mill.

In *In re Bossner*, 18 Ida. 519, 110 Pac. 502, this court held that words used in a statute without any technical meaning or application should be given their ordinary significance as they are popularly understood, and that the language used by the legislature must be considered in the light of the common acceptation of the terms employed.

The plaintiff, in order to recover, must show that he comes within the provisions of said Employers' Liability Act, and must show that he was an employee ''in or about'' said sawmill. In order to hold that he comes within the provisions of said act, the court must hold that a point six miles distant from said mill where the defendant was injured, and with no direct communication with said mill, is ''in or about'' said mill. To so hold would in effect be extending by implication the terms of said act beyond what the ordinary significance of the words used in said act clearly means as they are popularly understood.

The intent of the legislature in limiting the operation of said statutes to a point ''in or about'' a factory, etc., obviously was due to the fact that it was the duty of the employer to have some responsible agent or other person immediately in charge of the work at the mill itself to whom the employee could look for direction. We do not think it was the intent that said act should cover the entire ramifications of the

sawmill company, extending miles away from its plant and not connected therewith. Had the legislature intended that construction to be placed upon the act, they certainly would have used language indicating such intention. We think the language of the act should be given its plain, ordinary meaning and limited to employees actually "in or about" the defendant's mill.

The effect of said Employers' Liability Act is to limit the defenses formerly available to the defendant under the common law to those specifically provided for in the statute.

In *Chiara v. Stewart Min. Co.,* 24 Ida. 473, 135 Pac. 245, this court said:

"We may say, however, that the act of March 6, 1909, appears to have been adopted for the purpose of extending the rights of employees and limiting the defenses previously accorded to employers. The main purpose, evidently, was to abrogate the fellow-servant doctrine. This latter statute is almost an exact counterpart of a similar statute which has long been in force in Massachusetts, Alabama, Mississippi, South Carolina, Oregon and Colorado."

Upon this question, see, also, *Schulte v. Pacific Paper Co.,* 67 Or. 334, 135 Pac. 527, 136 Pac. 5.

Under the facts as they appear in the instant case, the defendant's liability should have been measured according to the common law, and the defendant should have had the right to avail itself of all the defenses to which it is entitled under the common law and the statutes of this state, aside from said Employers' Liability Act, and the trial court erred in holding that this action came under said act.

The court having reached the conclusion above stated, it will not be necessary for it to pass upon other assignments of error involving instructions and other matters. Since the trial court instructed the jury on the theory that the injury fell within the provisions of the Employers' Liability Act, it necessarily follows that the instructions are erroneous, as we have held that the case did not come within said act.

The judgment must therefore be reversed, and it is so ordered, with costs in favor of the appellant. The cause is re-

manded for further proceedings in accordance with the views expressed in this opinion.

Budge and Morgan, JJ., concur.