328 P.2d 60

The **STATE** of Idaho, on relation of Roscoe C. RICH, Leonard K. Floan and David P. Jones, Idaho Board of Highway Directors, Plaintiff-Respondent,

v.

Al FONBURG, a widower, Walter Fonburg and Betty Doris Tiede, a minor, Defendants-Appellants.

No. 8592.

Supreme Court of Idaho.

July 17, 1958.

Cox, Ware, Stellmon & O'Connell, Lewiston, for appellants.

Graydon W. Smith, Atty. Gen., Wm. R. Padgett, Asst. Atty. Gen., for respondents.

**KEETON, Chief Justice.**

This is an eminent domain proceeding brought by the State and its Board of Highway Directors, to condemn in fee simple absolute, 12.76 acres of defendant's farm, for highway purposes. The complaint also prays that defendant's access to said road from the land which the proposed highway crosses, be prohibited and restrained.

There is now in existence U. S. Highway No. 95, running to and from Culdesac, Winchester and other points, and defendant formerly enjoyed access to said highway at the Western Boundary of his land. The new road, when constructed, will eliminate the section of highway No. 95, where it now abuts and crosses defendant's land, and will destroy the existent easement for ingress and egress from his land to said highway No. 95, and connecting points, formerly enjoyed.

It is proposed that the present highway No. 95, when the new highway is constructed, will be abandoned in certain particulars. The new road, when constructed, will eliminate a part of highway No. 95, where it abuts defendant's land.

The proposed four-lane, limited access road is to be constructed along the north side of defendant's land and south of the Camas Prairie Railroad, and a spur line connected thereto. Said right of way and railroad were, prior to the present proceedings, contiguous to defendant's land through which the right of way being condemned runs. Defendant will be prevented from crossing the new highway from his land to the railroad, except by a circuitous route permissible at one point. The farm of defendant, across which the new road runs, borders on highway No. 95 and said railroad.

Located on the land being taken are certain improvements, namely, a barn, fence, shed, corral, well and loading chute. These improvements were formerly used in connection with defendant's farm and business.

Defendant also owns land non-contiguous to the land through which the new road crosses, namely, a residence and farm land, located in or near Culdesac, and north from the railroad track, his dwelling being approximately 600 to 1,000 feet distant from the land taken.

On a hearing had in the district court the trial judge held that the use to which the property sought to be condemned will

be put is a public use and one authorized by law; that the necessity for the taking was established, and "There is also condemned and taken herein all rights of access to and from all properties abutting upon the above described parcel No. 24 [land of defendant, which the road crosses], and such rights of access, if any, existing heretofore are extinguished and the usage of any such access is hereby prohibited."

After the findings of necessity and the public use to which the land and other rights sought to be condemned were to be out, the issue of damages was tried before a jury, and on its verdict, judgment entered for defendant for damages found.

Defendant made a motion for a new trial on grounds that objection to certain offered evidence had been sustained that should have been overruled, and the refusal of the court to give certain requested instructions. From the judgment entered and the order denying the motion for a new trial, defendant Al Fonburg, the landowner, appealed.

In assignments of error, appellant challenges the right of plaintiff to condemn property for the purposes intended, claims that there is no legal authority to condemn defendant's right of ingress and egress to his property abutting the proposed new highway; also error in receiving certain evidence, sustaining objection to other offered evidence, and certain instructions given and others refused.

We shall first address our attention to the contention that the State has no authority to prohibit access to a public road by a landowner through whose land the road is constructed.

By the provisions of subd. 9, Ch. 260, 1955 S.L., the Board of Highway Directors is empowered to purchase, condemn, or otherwise acquire real property in fee, including rights of direct access from property abutting highways with controlled-access, deemed necessary by the Board for present or future state highway purposes.

This provision was amended by Ch. 227, p. 520, 1957 S.L., now codified as Sec. 40–120 I.C. (Supp.), by the terms of which the Idaho Board of Highway Directors is given power to:

"(9) Purchase, condemn or otherwise acquire (including exchange), * * * *any* real property, either in fee or in any lesser estate or interest, *rights-of-way, easements and other rights* * * * and rights of direct access from the property abutting highways with controlled-access, deemed necessary by the board for present or future state highway purposes. The order of the board that the land sought

is necessary for such use shall be prima facie evidence of such fact."

The amendment was not in effect when this action was commenced, February 1, 1957, but was in effect when the action was tried.

By the provisions of Sec. 7-701, I.C., among the uses that the right of eminent domain may be exercised, specifically provided, among other things, for the construction of roads.

■ It appears from a reading of these statutes that the State is authorized to do what it proposes to do in this proceeding, namely, to condemn land to be used for a limited access highway and acquire the fee title to privately owned property, limiting or curtailing entry of an adjoining landowner which would ordinarily be appurtenant to the land not taken.

The statute quoted specifically provides for the taking of land for a controlled-access highway, deemed necessary by the Board of Highway Directors.

■ The power of eminent domain extends to every kind of property authorized by law within the jurisdiction of the State, when taken for a public use, including the right of access to and from a public highway.

The contention made here that access to a public highway by an adjoining land-owner cannot be prohibited, has been presented to other courts for determination, and while the rules adopted as applicable to the situation are not in all respects in accord, we think the following cases sustain the contention that the land and easements, including access formerly enjoyed by the landowner and sought to be taken in this proceeding, may be acquired and taken in the manner attempted: State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783; State v. Calkins, 50 Wash.2d 716, 314 P. 2d 449; State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57; Petition of Burnquist, 220 Minn. 48, 19 N.W.2d 394; Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276.

■ Appellant further assigns as error the receiving in evidence of exhibit No. 2. This is an order of condemnation made by the Board of Highway Directors, by which the Board concluded that the construction of the highway across defendant's land, in the manner proposed, is necessary for a public use and because of the inability to settle with the land-owner, the condemnation proceedings were ordered. The order of the Board that the land sought in this proceeding is necessary for a public use is prima facie evidence of such fact. Sec. 40-120, I.C. (Supp.), subd. 9. The resolution and order were properly admitted in evidence.

■ Prior to the institution of the action and while negotiating a settlement, the State offered, among other considerations, to build a cattle underpass at station 676 plus 50. The offer was not accepted by defendant. No settlement was made and in the construction of the highway, the underpass was not a part of the plans. Defendant contends that a cattle chute should be constructed by the State.

When, as here, an offer of settlement was by the landowner refused, the State is not bound by the offer, and could not, after such refusal, be required as part of its plans and specifications to construct an underpass. The offer of the State, if made, was nothing more nor less than an offer of compromise, and an attempt to settle the issue of damages with the landowner.

If a cattle underpass were shown to be necessary, its nonconstruction could be compensated for in damages, if any such were proved.

Defendant Fonburg was asked the question:

"Will you state whether you asked the State to provide you with an access road?"

Objection to the question was sustained and the ruling is assigned as error.

■ The landowner could not require the State, over its objection, to construct an access, or any road different from the one proposed in its plan of construction, and objection to evidence offered in this regard was properly sustained.

The contention of appellant in assignments of error and arguments here made, that his residence in Culdesac, and ownership of land non-contiguous to and disconnected with the land sought to be condemned should be considered as an element of severance damage is not sustainable.

■ The different parcels of defendant's land, separated and located at a distance, one from the other, one south of the track and the other north, are not severed by the proposed new road. The land separating the two parcels of defendant's land is owned by third persons. The trial judge did not err in refusing to instruct the jury to allow severance damages in this regard.

■■ Nor is the condemnee entitled to damages because he is not granted unrestricted access to the new part of the road being constructed. There is no inherent right of access to a newly relocated highway. The new highway not being in existence prior to the present construction, the landowner would suffer no compensable damages because his access to the new construction was denied him. The condemnee never having had access to the new highway there is no easement or access taken in this proceeding. There

can only be compensable damages for an existing easement, and when one does not exist, there is none to take.

Private rights relative to the use and entry of highways may be regulated many ways. Where a property owner has no right of direct access to a highway, nothing is taken from him by the failure to give him such a right when the highway is constructed. State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783; State v. Calkins, 50 Wash.2d 716, 314 P.2d 449; State ex. rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57; Carazalla v. State, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276; Schnider v. State, 38 Cal. 2d 439, 241 P.2d 1, 43 A.L.R.2d 1068; City of Los Angeles v. Geiger, 94 Cal. App.2d 180, 210 P.2d 717.

Defendant complains he was not allowed his costs in the district court. The cost bill was not filed or served within five days after the verdict, in compliance with Sec. 12–113, I.C.; Chicago, M., St. P. Ry. Co. of Idaho v. Trueman, 18 Idaho 687, 112 P. 210.

The assignments of error dealing with instructions requested which were not given and the alleged error in giving certain instructions will now be discussed.

Requested instruction No. 1 purports to outline to the jury the issues in the case and the matters which are to be determined by the jury. The instruction so requested is in many respects erroneous. It is long and confusing and sets forth allegations contained in the answer of alleged claim for damages which are not allowable. Among other things, it seeks to recover various severance damages for non-contiguous parcels of land and matter not within the pertinent issues.

Where a part of the owner's contiguous land is taken in a condemnation proceeding, all inconveniences resulting to the owner's remaining land, including an easement or access to a road or right of way formerly enjoyed, which decrease the value of the land retained by the owner, are elements of severance damage for which compensation should be paid. 29 C.J.S. Eminent Domain § 105, p. 910; 29 C.J.S. Eminent Domain § 163, p. 1033; State ex rel. Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112; State v. Styner, 58 Idaho 233, 72 P.2d 699, and in Creasy v. Stevens (Marshell v. Stevens), D.C., 160 F.Supp. 404, 405, the Court held:

"The right of access to a public highway is a property right which cannot be taken or materially interfered with without just compensation."

However, the instructions given to the jury contained no outline of the elements of damages that the jury should consider. Throughout the instructions given, the trial judge instructed the jury that it should

award defendant damages for the land taken, and severance damage to the remainder. The jury was nowhere in the instructions given advised as to the claimed severance damages because of destroyed or curtailed access to highway No. 95, as formerly enjoyed, nor was it advised that the improvements and access to the railroad right of way was an element to be by it considered.

 Accessibility to the railroad formerly enjoyed, which because of the taking of a part of defendant's land, is limited and restricted, thereby decreasing the value of the remainder, if it does, is an element of severance damage to be submitted to and considered by the jury.

 It is the duty of the court to instruct the jury, when requested, upon every reasonable theory pertinent to the issues which finds support in the evidence. Lemman v. McManus, 71 Idaho 467, 233 P.2d 410.

Requested instruction No. 2 was covered in substance by instruction No. 2 given.

Requested instruction No. 3 contains in substance claimed damages for curtailment of access to land wholly disconnected with the land through which the road runs, and does not limit the damages to the curtailed access, formerly enjoyed to highway No. 95, as it now exists across defendant's land. The instruction as requested was properly refused.

 Requested instruction No. 6, which was refused, should have been in part given. The court should have instructed the jury that the easement and right of access, ingress and egress to highway No. 95 as formerly enjoyed, and curtailed in this proceeding, was an element of damage to be considered by the jury, and requested instruction No. 8, which reads:

"You are further instructed that convenience of access to a highway, formerly enjoyed by the owner of the land sought to be condemned, and impaired by reason of the limited access highway proposed to be constructed and for which condemnation of defendant's land in this proceeding is sought, can be considered by the jury with the other testimony in the case in fixing the amount of damage sustained by the defendant."

should have been given.

Requested instruction No. 9 was properly refused.

Requested instruction No. 10 claims severance damage because of non-contiguous land, that is, land lying north of the railroad right of way. The instruction was properly refused.

 Requested instructions No. 27 and No. 28 advised the jury in substance that benefits due to the construction of the road that would inure generally to the public

are not special benefits to the defendant and should not be offset against severance damage. The State did not claim that the construction of the road as proposed resulted in any special or direct benefit to defendant. The jury did not find that there were any benefits. Hence direct or special benefits to be offset against the severance damage were not within the issues and refusal to give such instructions was not error.

As a new trial is to be ordered, the jury should be instructed that the construction of the highway in the manner proposed will confer no special or direct benefits on defendant, and nothing is to be offset from the item of severance damage.

■ We think the jury should have been instructed as to the elements of damage claimed to have been suffered by defendant, and supported by any proof, because of the taking of the land and the construction of the improvement in the manner proposed. These elements of damage consist of the reasonable market value of the land taken, together with all improvements thereon located and taken in this proceeding, severance damage to the remainder, through which the road runs due to its severance from the whole, which severance damage would include, among other damage sustained, the curtailment and restriction of access to highway No. 95, as formerly enjoyed, and access to the railroad as enjoyed prior to the construction of the new road. 29 C.J.S. Eminent Domain § 105, p. 910; Creasy v. Stevens (Marshell v. Stevens), D.C., 160 F.Supp. 404.

The elements of damage which must be ascertained and assessed are provided for in Sec. 7–711, I.C. The section inter alia provides that the court, jury or referee, after hearing the evidence, must ascertain and assess the value of the property sought to be taken and improvements thereon pertaining to the realty and each and every estate and interest therein, and

"If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff."

If such elements of damage are supported by any substantial evidence, the jury should be advised to consider the same in awarding damages.

Other assignments of error are covered by what has been said.

That part of the judgment which decreed the necessity for the taking for a public use and the power of the State to

condemn the land in the manner proposed is affirmed.

The judgment for the damages sustained is reversed and a new trial granted on the issue of damages only. Costs to appellant.

PORTER, TAYLOR, SMITH and McQUADE, JJ., concur.