390 P.2d 297

Neva C. Ramirez DOMINGO, an individual, and Neva C. Ramirez Domingo, guardian ad litem for Della Etta Ramirez Domingo, Plaintiff-Appellant,

v.

Gaylord PHILLIPS, Defendant-Respondent.

No. 9251.

Supreme Court of Idaho.

March 13, 1964.

Lawrence H. Duffin, Rupert, Richard R. Black, of Black & Black, Pocatello, for appellant.

Parry, Robertson & Daly, Twin Falls, for respondent.

**McFADDEN, Justice.**

Plaintiff-appellant, Neva C. Ramirez Domingo, instituted this damage action on her own behalf and that of the adoptive minor daughter of herself and her late husband Mateo Ramirez Domingo. She claims damages for the death of her husband, who died from injuries received when he was pinned between a barn door and the rear of defendant-respondent's truck. The cause was tried before a jury, which returned a verdict in favor of the respondent. This appeal is taken from the judgment entered on the verdict. Appellant's assignments of error necessitate a rather detailed statement of the facts developed during the trial.

Respondent Phillips owned a truck he used in hauling of cattle. He had been acquainted with Mr. Domingo for a number of years; at least twice a year for the past ten years he has delivered or picked up cattle at Mr. Domingo's farm, at the request of Mr. Domingo who was engaged in a farming operation, raising sheep and cattle on his premises a few miles southwesterly from Paul, Idaho. Mr. Domingo always assisted in loading or unloading cattle from the truck. The cattle were loaded from a barn, as Mr. Domingo did not have a loading chute. In loading the cattle, the practice was to open the "dutch type" barn door, which was so divided that the upper and lower halves were suspended independently from each other. The lower portion of the door was opened and set at right angles to the rear end of the truck, and the truck was backed up to it so that the lower portion served as a closure to the left of the truck to keep cattle from escaping to that side.

Another guard was used on the right side of the truck. Respondent had a portable ramp under the bed of his truck which was let down, and the cattle when loaded were forced up this ramp into the stock rack of the truck, and when unloaded were forced down the ramp. The tail gate of the truck was not opened until the truck and door were situated for the loading or unloading operation. •

Shortly before noon on January 9, 1961, the day of the accident, at Mr. Domingo's request, respondent came to the premises to load cattle. He drove his truck into the yard and backed it toward the barn where the cattle were to be loaded, and stopped. Mr. Domingo came out of the house and respondent opened the left window of the cab and the two of them visited briefly. Mr. Domingo then went to the rear of the truck, and respondent backed to within ten or twelve feet of the barn, waiting for Mr. Domingo to open the doors. Respondent looked through the rear window of the cab of the truck; Mr. Domingo opened the barn doors, stood in the door way, and motioned for respondent to again back the truck.

Respondent put the truck in gear, and let it idle backwards to where he thought he should be, then began to brake. The truck came to a halt just as he felt it ease against the door. In backing, respondent kept one foot on the brake and the other on the clutch, and was watching his progress through the left rear-view mirror. Respondent could not see Mr. Domingo in this mirror, but did have his cab window open. Respondent stated he could have heard any audible directions that might have been given, but that he heard none.

After the truck stopped, respondent went to the back to lift the tail gate of the truck and found Mr. Domingo pinned between the lower half of the barn door and the end of the truck. The top half of the door was against the truck; the lower half, pinning Mr. Domingo, was not opened as wide as the top half. Respondent then pulled the truck forward, and went back to Mr. Domingo, and laid him out on the ground, where he died within moments. Respondent then went to the house and told appellant, "Call for some help! I think I just killed Mateo." A telephone operator was contacted who notified the authorities and arranged for an ambulance. According to appellant's testimony she asked Phillips how the accident happened and he said, "I didn't see Mateo, and I'm afraid I went back too fast." Phillips admits telling her, "I think I've killed Mateo," but denies saying he backed the truck too fast. Phillips asserts that on this occasion the preparations for loading were conducted in the same manner as previously.

Appellant's first assignment of error is a general statement that the verdict and judgment are contrary to the evidence and law, which presents in general terms the same

**60**

issues specifically presented by the other assignments of error.

Appellant claims error in the trial court's denial of her motion to strike respondent's affirmative defenses. The answer alleged as a defense decedent's contributory negligence and that he had assumed the risk of injury. Appellant also assigns as error certain instructions given by the court to the jury pertaining to these affirmative defenses.

■ A trial court is under the duty to instruct upon every reasonable theory of the litigants that is recognized by law as presenting a basis for a claim for relief or defense thereto, when such theory finds support in the pleadings and the evidence. State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60; Wurm v. Pulice, 82 Idaho 359, 353 P.2d 1071, and cases therein cited.

Appellant contends there is no evidence to support respondent's theory of contributory negligence, citing the decision of Larsen v. Jerome Cooperative Creamery, 76 Idaho 439, 445, 283 P.2d 1096, where, in the majority opinion, it was stated:

"Contributory negligence, though generally a question of fact for the jury, becomes a question of law for the court when established facts and circumstances permit only one possible conclusion to be drawn by a reasonably prudent man."

The facts in the Larsen case differ from those presented here. In the Larsen case the defendant backed his truck 74 feet in a wide arc. The backing commenced from an 8 to 12 inch depression in which the rear wheels of the truck were parked. With the wheels so located the truck was sitting at an angle. The defendant glanced into the right rear-view mirror while the truck was still parked. The view through the mirror was restricted due to the angle of the truck. In backing the defendant glanced° only once into the right rear-view mirror. The mirrors furnished no view to the immediate rear of the truck. After backing the defendant drove forward. The body of the deceased boy was discovered a few minutes later at the end of the 74 foot arc. The boy's death was caused from the injuries he received when run over by the left rear dual wheels of the truck. There were no eye witnesses to the tragic event and the defendant was never aware of the boy's presence in the yard. The record was devoid of evidence as to the boy's conduct. By the majority opinion it was held in that case there was no evidence of any contributory negligence, and the cause was reversed for new trial. See also dissenting opinion in Larson v. Jerome, supra; dissenting opinion in Madron v. McCoy, 63 Idaho 703, 718, 126 P.2d 566; Bell v. Carlson, 75 Idaho 193, 199, 270 P.2d 420.

■ In the instant action there is evidence of the decedent's conduct. Respondent's uncontroverted testimony established

decedent's actions in directing the truck to commence backing. Domingo was last seen in a position of safety standing in the doorway; the circumstantial evidence shows that for some unknown reason he left this position of safety. It is our conclusion that an issue of fact was presented requiring submission to the jury of the defense of contributory negligence. State ex rel. Rich v. Fonberg, supra; Wurm v. Pulice, supra.

The giving of an instruction on assumption of risk is also assigned as error. Appellant argues that the evidence fails to support such theory, and specifically asserts that the doctrine of assumption of risk is applicable only to the cases involving a master-servant or a contractual relationship.

■■ For the defense of assumption of risk to be considered, a defendant must show that the plaintiff (or the decedent as in this action) knew the danger, understood and appreciated the risk therefrom and voluntarily exposed himself to such danger. Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651. In the instant action decedent was shown to have been familiar with the loading operations involving his barn, its doors, and respondent's truck. Any ordinary person would have recognized the inherent danger of placing himself between the edge of an open door and a moving truck. While there was no direct testimony as to why the decedent placed himself in such position, the circumstances of this case are sufficient from which the jury could infer that he voluntarily did so. These facts justified the giving of the instruction.

■ While some cases have indicated that the defense of assumption of risk should be confined to cases involving a master-servant or a contractual relationship (see: Dubiver v. City & Suburban Ry. Co., 44 Or. 227, 74 P. 915, 916, 75 P. 693 (1904); Furbeck v. I. Gevurtz & Son, 72 Or. 12, 143 P. 654 (1914); Rutherford v. James, 33 N.M. 440, 270 P. 794, 63 A.L. R. 237 (1928)), the better reasoned cases have established the general rule that such a defense is not limited to a master-servant or a contractual relationship. Prescott v. Ralph's Grocery Co., 42 Cal.2d 158, 265 P. 2d 904 (1954); Tucker v. Lombardo, 47 Cal.2d 457, 303 P.2d 1041 (1956); Prosser, Torts, § 55, p. 309 (2d ed. 1955); 38 Am. Jur., Negligence § 171, p. 845, 65 C.J.S. Negligence § 174, p. 848–849. Oregon and New Mexico have overruled the decisions which originally limited application of the doctrine to master-servant relationships. Hunt v. Portland Baseball Club, 207 Or. 337, 296 P.2d 495 (1956); Reed v. Styron, 69 N.M. 262, 365 P.2d 912 (1961). No error was committed by the trial court in refusing to strike from the answer the defense of assumption of risk, nor in giving

**62**

the instructions submitting such defense to the jury.

Appellant asserts error in the giving of the following instruction:

## "INSTRUCTION NUMBER SIXTEEN"

"A person driving a motor vehicle, forward or backing it, is required to keep a proper lookout, reasonable under the circumstances, to avoid injury to persons who might be in the area."

She claims that such instruction is not a complete or correct statement of the law. Appellant also asserts error of the court in refusing to give appellant's requested instructions No. 1, 6 and 7, all of which deal with the respondent's duty to maintain a proper lookout; she asserts that her theory of the case had to be presented to the jury, i. e., that respondent did not maintain a proper lookout, did not watch what he was doing in backing his truck, and that he backed too fast, which constituted negligent conduct which proximately caused decedent's death.

█ Instruction No. 16 correctly stated the applicable law. The appellant's requested instructions all dealt with the duty of a driver to maintain a lookout while in the process of backing. Instruction No. 16, supra, together with the other of the court's instructions dealing with the burden of proof, proximate cause, and the definition of

the term "negligence" adequately explained the respondent's duty. In the absence of a duty imposed by statute, the jury is required to measure the conduct of respondent by the standard of a reasonably prudent person under the same or similar circumstances, which standard was set out by Instruction No. 16, see: Union Traction Co. v. Berry, 188 Ind. 514, 121 N.E. 655, 124 N.E. 737, 32 A.L.R. 1171, 1179 (1919); Simmons v. Anderson, 177 Wash. 591, 32 P.2d 1005 (1934); Hubbard v. Embassy Theater Corp., 196 Wash. 155, 82 P.2d 153 (1938); Novak v. Peira, 175 Cal.App.2d 29, 345 P.2d 349 (1959); Prosser, Torts, § 31, p. 124 (2nd ed. 1955). No error appears in this regard.

█ Error is assigned to the court's refusal to give certain of appellant's requested instructions which were based on provisions of the motor vehicle law, I.C. §§ 49–723, 49–760 and 49–836. At the time of the accident, respondent's truck was not being operated upon a public highway but upon the private property of decedent. I.C. § 49–522 provides:

"The provisions of this act [Uniform Act Regulating Traffic on Highways, adopted S.L.1953, ch. 273] relating to the operation of vehicles refer exclusively to the operation of vehicles upon the highways * * *".

The instructions based on I.C. § 49–723 and § 49–760 were properly refused, as

those sections related to the operation of a vehicle on a highway. The refusal to give the requested instruction based on I.C. § 49–836 was not prejudicial for no issue was presented by the record as to compliance or noncompliance with such section.

Appellant asserts reversible error was committed by the trial court in refusing to give her requested instructions Nos. 13 and 14 which dealt with the presumption of due care on the part of decedent. It is asserted that the error was compounded by the giving of Instruction No. 13, which reads as follows:

"The law presumes that both the defendant and plaintiff's decedent, Mateo Ramirez (sic), in their conduct at the time of, and immediately preceding the accident here in question, were exercising ordinary care.

"These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof."

The giving of an instruction on the presumption of due care on the part of decedent depends on the factual pattern of each individual case. In certain cases this court has approved the giving of such an instruction. For example, see: Adams v. Bunker Hill, etc. Min. Co., 12 Idaho 637, 647, 89 P. 624, 11 L.R.A.,N.S., 844; Fleenor v. Oregon Short Line R. R. Co., 16 Idaho 781, 102 P. 897; Chiara v. Stewart Mining Co., 24 Idaho 473, 478, 135 P. 245; Geist v. Moore, 58 Idaho 149, 166, 70 P.2d 403; Brown v. Graham, 62 Idaho 388, 403, 112 P.2d 485; Larsen v. Jerome Cooperative Creamery, 76 Idaho 439, 444, 283 P.2d 1096. On other occasions it was found that the giving of such an instruction was unnecessary. For example, see: Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R. 317; MacDonald v. Ogan, 61 Idaho 553, 560, 104 P.2d 1106; Koch v. Elkins, 71 Idaho 50, 56, 225 P.2d 457; Neff v. Hysen, 72 Idaho 470, 475, 244 P.2d 146; Graham v. Milsap, 77 Idaho 179, 187, 188, 290 P.2d 744; Lallatin v. Terry, 81 Idaho 238, 247, 340 P.2d 112; Van v. Union Pacific Railroad Company, 83 Idaho 539, 550, 336 P.2d 837; Mundy v. Johnson, 84 Idaho 438, 373 P.2d 755; Drury v. Palmer, 84 Idaho 558, 564, 375 P.2d 125; Dewey v. Keller, 86 Idaho 506, 388 P.2d 988.

The presumption of due care is justified by the natural instinct of self preservation and the disposition of mankind

to avoid injury and personal harm. Such presumption is used when there is a lack of evidence as to the injured person's actions. In the instant action the necessity of giving the instruction was removed by circumstantial evidence of decedent's conduct between the time respondent saw him in the doorway and moments later when respondent found decedent pinned between the door and the truck. The testimony of respondent was not inherently incredible and stands unimpeached. In the case of Mundy v. Johnson, 84 Idaho 438, 373 P.2d 755, this court stated, at page 450:

"We have held that an instruction on the presumption of due care is not proper where there are available witnesses to the facts and circumstances leading up to the accident and the actions of the injured party immediately prior thereto. In this case there was evidence as to the activities of the deceased child from the time she left the Bible school to the time she ran out in front of the car. Nothing is left to guess or speculation as to how the accident happened. In such circumstances we have held that an instruction on the presumption of due care is unnecessary. The rule imposing the burden of proof upon the defendant to establish contributory negligence is in such cases an adequate protection to the rights of plaintiffs."

There was no error in refusing to give these instructions.

■ The effect of instructing the jury that both the decedent and respondent were presumed to be exercising due care immediately prior to the accident, was prejudicial to neither party. It was commensurate in effect to saying that the burden of proving the negligent conduct of a party is on the person asserting negligence. Russell v. City of Idaho Falls, 78 Idaho 466, 477, 305 P.2d 740. No reversible error appears from the giving of the instruction.

■ Appellant also complains that the court's instructions were repetitive and overemphasized the defendant's theory of the case, referring to Instructions Nos. 2, 7, 9, 11, 12, 13, 14, 15, 17, 18(a) and 19. This assignment likewise is without merit. Instruction No. 7 defined contributory negligence; 15 defined assumption of risk; 11 and 12 advised the jury that respondent had the burden of proving those affirmative defenses; 2 recites the claims of the respective parties, and the remaining were applicable equally to both parties. In order to explain fully, and to clarify the issues and define the terms involved herein such instructions were necessary and proper. As stated in Stuchbery v. Harper, 87 Idaho 12, 390 P.2d 303:

"In his instructions the trial judge should avoid unnecessary repetition and make the instructions as brief and

concise as possible. However, clarity is of paramount importance and is not to be sacrificed to brevity."

Considering the instructions given by the court as a whole, (State ex rel. Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112; Pacific Northwest Pipeline Corp. v. Waller, 80 Idaho 105, 326 P.2d 388), the court fully and adequately instructed the jury on the applicable law and appellant's theory of the case; no error appears.

Judgment affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.